

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5448 | DATE | 4/3/2003 |
| CASE TITLE | Patrick DeLaFont et al. Vs. Karen Beckelman et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants McKenzie, Cohen-Golper, Eads and Everette-Williamss' motion to dismiss is granted, defendants Beckelman, Jones and Glenney's motion to dismiss count I is denied, Glenney's motion to dismiss count II is granted, and Beckelman and Jones' motion to dismiss counts II is denied insofar as plaintiffs allege misconduct in the investigation. Status hearing set for April 17, 2003 at 9:15am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | | | |
| | Notices mailed by judge's staff. | | | | **APR 04 2003** | | |
| | Notified counsel by telephone. | | | | date docketed | | 32 |
| ✓ | Docketing to mail notices. | | | | | | |
| | Mail AO 450 form. | | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | | |
| | | courtroom deputy's initials | | | date mailed notice | | |
| | WAH | | | | | | |
| | | | | Date/time received in central Clerk's Office | | mailing deputy initials | |

DOCKETED

APR 0 4 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICK DE LA FONT, et al., )
)
              Plaintiffs )
)
          vs. )    No. 02 C 5448
)
KAREN BECKELMAN, et al., )
)
              Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Patrick DeLaFont, Stacey DeLaFont and their children, Kristin DeLaFont,

Kaitlyn DeLaFont and Patrick DeLaFont, Jr., brought this suit against defendants, current

and former employees of the Division of Child Protection (DCP) (a division of the Illinois

Department of Children and Family Services (DCFS)), alleging violations of their civil rights

pursuant to 42 U.S.C. § 1983. Defendants filed motions to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that they were protected by

qualified immunity. For the following reasons, defendants' consolidated motion to dismiss is

denied in part and granted in part.

## BACKGROUND

The facts are taken from plaintiffs' complaint. At the time of the events giving rise to

the complaint, Patrick DeLaFont was, along with his co-teacher Martha Lang, responsible for

teaching children ages three to five at Cradles in Skokie, Illinois. On January 3 or 4, 2001,

Amelia B., a student assigned to Patrick's classroom, allegedly told her mother that, "Patrick

digs in my booty at naptime." The following morning, Mrs. B. reported the statement to her

32

husband and then to Ronna Cooper, Cradles' director. She also informed Cooper that she would be removing Amelia from care at Cradles.

As a mandated child abuse reporter, Cooper was required to report the statements to a DCFS hotline and did so on January 5, 2001. DCP officials coded the call as an allegation of sexual molestation and began investigation. Defendant Karen Beckelman allegedly assigned defendant Andrea Jones to handle the investigation, directing Jones to implement a safety plan involving Patrick's children and to implement an employment-related safety plan. Beckelman also allegedly added allegations of sexual misconduct as to DeLaFont's own children and designated the DeLaFont children as victims at "substantial risk."

DCFS derives its power to act from the Illinois Abused and Neglected Child Reporting Act (ANCRA), 325 ILCS 5/1 *et seq.*, and other child safety provisions in the Illinois code. Plaintiffs claim that nothing in Illinois law authorizes DCFS to order a parent to cease contact with his children or to require a parent to undergo treatment absent a court order. Despite the lack of legal authority, plaintiffs allege that DCFS has internal policies in effect known as the "Child Endangerment Risk Assessment Protocol" (CERAP). These policies require DCFS officers to take steps--unauthorized by state law--within 24 hours, to protect children.

Pursuant to CERAP policies and Beckelman's instructions, Jones allegedly phoned Cooper on January 5, 2001, and directed her to remove Patrick immediately and stop him from having any further contact with children. Shortly thereafter, Jones called Stacey DeLaFont and told her that Patrick should leave home immediately and cease contact with the three DeLaFont children. Jones allegedly told Stacey that if she and Patrick did not comply the children would be immediately taken into DCFS custody. Stacey and Patrick complied

immediately with the DCFS directive.

On January 9, 2001, DCFS officers interviewed Ameila B. for several hours. She allegedly changed her accusation slightly, and described the situations in which abuse had occurred. Plaintiffs claim that there were inconsistencies in her story. Jones concluded that Amelia B. had made a credible statement of sexual abuse and that the safety plans should continue to be enforced.

On January 15, 2001, Jones scheduled an interview with Patrick and Stacey DeLaFont and the DeLaFont children at their home. At this interview each member of the family allegedly denied that Patrick had any inappropriate sexual contact with the children. Despite these statements, the safety plan was still in effect. The DeLaFonts also claim that, as of this point of the investigation, they had not been informed as to exactly what the allegations against Patrick were.

DCFS policy further requires that investigators attempt to interview other children in the day-care setting and to search for further allegations. On January 31, 2001, Jones interviewed eight children at Cradles and none indicated that he or she had been inappropriately touched or otherwise abused by Patrick. Plaintiffs allege that no DCFS employee set up an interview with Martha Lang while investigating Patrick, but that she later testified to a series of facts that undermined the allegations of Amelia B.

After conducting an investigation, DCFS officers determine if there is "credible evidence" of abuse and decide whether the report should be "indicated." This finding is equivalent to a DCFS finding of guilty of the abuse or neglect. This indicated finding is then registered in the State Central Register (register) and stands as the final finding unless it is

subsequently overturned through the appeals process. Such a finding basically makes it impossible to work in the child care field. DCFS policy requires indicated findings to be approve by a child protection manager.

On February 5, 2001, Jones and Beckelman allegedly decided to indicate allegations of sexual molestation and sexual harm against Patrick DeLaFont. Jones disclosed this to the DeLaFonts and instructed them that the safety plan would remain in effect and any contact between Patrick and the children should be supervised and occur in a public, visible location. Patrick's employment at Cradles was formally terminated at this time and he no longer received wages.

Further investigation of Patrick's case was designated to defendant Donna McKenzie, who, under direction from her superiors, including defendant Susan Cohen-Golper, continued to enforce the banishment directive. Despite pleading from the DeLaFonts, McKenzie and Cohen-Golper determined to keep the directive in place.

On March 30, 2001, DCFS sent a notice to the DeLaFonts, signed by defendant Linda Everette-Williams, stating that the allegations had been indicated and that Patrick now had the opportunity to appeal the findings. Defendants further informed Patrick that he would have to submit himself for sexual offender assessment. The DeLaFonts chose to appeal the findings, pressing for a prompt decision so that Patrick would be able to return home and seek employment.

The DeLaFonts' counsel allegedly directed several letters to DCFS officials detailing the problems with the investigation. A review was then allegedly conducted by defendant Mary Ellen Eads, who decided not to amend the safety plan. In August 2001, DCFS presented its

evidence at an evidentiary hearing. The Administrative Law Judge (ALJ) held a conference with DCFS to discuss the possibility of expunging the report prior to a ruling. Following that hearing, DCFS still refused to lift the safety plan or allow Patrick to return home. The ALJ completed her recommendation in favor of expungement.

On December 4, 2001, the DCFS director reached a decision of expungement and the DeLaFonts received word of this decision on December 11, 2001. This decision completely exonerated Patrick DeLaFont of the indicated findings against him and ordered expungement of the reports from the register.

## DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss we must assume the truth of all well-pleaded allegations, making all inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). The court should dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). While the complaint does not need to provide the correct legal theory to withstand a Rule 12(b)(6) motion, it must allege all of the elements necessary to recover. Ellsworth v. City of Racine, 774 F.2d 182, 184 (7th Cir. 1985), cert. denied, 475 U.S. 1047 (1986).

Plaintiffs' complaint consists of two counts. In count I, all plaintiffs allege violations of their constitutional right to family autonomy by all defendants. Plaintiffs allege that their due process rights were violated when the DCFS officers put into effect the banishment directives and refused to terminate the directives while lacking a strong governmental interest and without any pre- or post-deprivation process. They further allege that the credible evidence

standard used by DCFS is unconstitutional and that, in any event, there was no credible evidence in this case. Finally, plaintiffs allege that Beckelman and Jones intentionally or recklessly fabricated evidence and otherwise improperly conducted the investigation.

In count II, Patrick DeLaFont alleges that his right to a career opportunity was deprived by defendants Beckelman, Jones, Glenney and Everette-Williams, when he was deprived of his job without pre- or post-deprivation process. Plaintiffs also reallege the claims of misconduct in the investigation.

I.    Time Line of Case Law

A state actor is shielded from liability if their conduct does not violate a clearly established constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). We look to the relevant case law to determine if a reasonably diligent official could have realized that the alleged conduct violated such a right. Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir. 1985). For this reason, a brief look at relevant cases is helpful.

In December 2000, the Seventh Circuit decided Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000). The court stated that the Supreme Court has long recognized a fundamental right to familial relations. Id. at 1018, citing Price v. Massachusetts, 321 U.S. 158, 166; Myers v. Nebraska, 262 U.S. 390, 399 (1923); Santosky v. Kramer, 455 U.S. 745, 753 (1982). In determining what process is due before a deprivation of this right, a court must balance the state's competing interest in protecting children. Brokaw, 235 F.3d at 1020. At a minimum, government officials are required not to misrepresent facts in order to remove a child from parents. Id. Due process further requires that state officials should not remove a child from parents without a pre-deprivation hearing and court order, absent exigent

circumstances. *Id.*

The events in question occurred in January 2001, after the <u>Brokaw</u> decision. Subsequent to the initial events in this case, in March 2001, Judge Pallmeyer granted a motion for preliminary injunction in <u>Dupuy v. McDonald</u>, 141 F. Supp. 2d 1090 (N.D. Ill. 2001). In so doing, she determined that DCFS policies that resulted in registering plaintiffs as sex offenders, based solely on credible evidence, was impermissible. *Id.* at 1136. The state interest in the protection of children is outweighed by the plaintiffs' interests and the irreparable harm that results from an erroneous determination. *Id.* at 1141.

In August 2002, the Seventh Circuit, in <u>Doyle v. Camelot Care Centers</u>, 305 F.3d 603 (7th Cir. 2002), determined that the credible evidence standard, as used by DCFS in that particular case, was violative of the constitution. *Id.* at 619. "DCFS' current method of disclosing the indicated findings to an individual's current and prospective employers based only on the credible evidence standard creates a perceptible risk of erroneous deprivations." *Id.* The court went on to hold that DCFS employees were entitled to qualified immunity because previous cases failed to "establish that the credible evidence standard failed to satisfy due process requirements in this administrative context." *Id.* at 620. These earlier cases should however "cause a reasonable official to craft carefully an administrative scheme that relies on the credible evidence standard." *Id.* at 621.

II.    Personal Involvement

A plaintiff may bring a Section 1983 claim only against those individuals actually responsible for the constitutional deprivation. *See* <u>Sanville v. McCaughtry</u>, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiffs may not rely on the doctrine of *respondeat superior* but must allege

personal involvement in the wrongdoing. *Id., citing* Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001).

In Doyle, the Seventh Circuit found that DCFS investigators, supervisors and administrators were responsible for the development of the credible evidence standard and therefore have the requisite personal involvement for a Section 1983 claim. 305 F.3d at 615. They went on to determine that this standard was unconstitutional as applied to the facts of Doyle. Defendants were not on notice that this system violated due process rights until Doyle (or at least Dupuy), after the actions in this case. They are therefore entitled to qualified immunity as to this part of plaintiffs' claims and plaintiffs must allege involvement beyond the participation in the DCFS policies by each of the named defendants in order to survive this motion to dismiss.

### A.   Beckelman and Jones

Plaintiffs clearly allege personal involvement by Beckelman and Jones in the deprivations. First, they allege that Beckelman and Jones intentionally or recklessly falsified or ignored evidence in reaching their conclusions. Second, that Jones and Beckelman were directly responsible for the investigations and the banishment directives and were personally responsible for communicating the orders to Cradles and Stacey DeLaFont.

### B.   Glenney

Plaintiffs likewise allege the requisite personal involvement of defendant Glenney. While Glenney relied on the determinations made by Jones and Beckelman, plaintiffs allege that she had an independent responsibility to review the findings and make determinations. In her role as a screen against erroneous determinations, Glenney cannot simply avoid liability by relying

on the determinations of those under her control.

### C. McKenzie and Cohen-Golper

Defendant McKenzie and her supervisor Cohen-Golper were responsible for continuing and monitoring the banishment directive after the indicated finding was made. There are no allegations that McKenzie or Cohen-Golper independently evaluated evidence against Patrick or made any discretionary decisions as to leaving the directives in place. As such, reasonable officials in their positions could rely on the findings made by other DCFS officers. The allegations are not sufficient to show personal liability of McKenzie or Cohen-Golper.

### D. Eads

Likewise, plaintiffs do not sufficiently allege the personal involvement of Eads. There is nothing in the complaint to indicate that Eads played any role in the events until after the appeals process had started. At that time she refused to lift the plans that had been put into effect by her co-workers. Again, there is no indication that she independently evaluated the evidence against the plaintiffs or that she was unreasonable in relying on the findings of the investigators.

### E. Everette-Williams

Everette-Williams' role involved entering names into the register after an indicated finding was made and monitoring the DCFS hotline. There are no allegations that her role exceeded the performing of these administrative tasks. While the court in Doyle did determine that plaintiffs adequately alleged personal involvement in the deprivation, that finding went to Everette-Williams' role in the creation and development of the DCFS credible evidence policy. 305 F.3d at 615. As stated above, she is entitled to qualified immunity as to these allegations. Beyond this, plaintiffs do not sufficiently allege personal involvement of Everette-Williams.

### III.   Qualified Immunity

As a general rule, courts engage in a two-part inquiry to determine whether a defendant is immune from damages. We first determine whether the plaintiff has adequately alleged the deprivation of a constitutional right without due process and then determine whether the right was clearly established at the time of the alleged violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998). This methodology "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the public." Wilson, 526 U.S. at 609.

### A.   Count 1 - Family Autonomy

To satisfy the first prong of the test plaintiffs must establish that they were deprived of a constitutional right without due process of law. Zinermon v. Burch, 494 U.S. 113, 125 (1990). Plaintiffs allege that their right to family autonomy was deprived when the banishment directives were put into place without a strong governmental interest, post-deprivation process or sufficient evidence. They further allege that the investigation was mishandled either intentionally or recklessly by Beckelman and Jones.

The right to family autonomy has long been recognized by the Supreme Court. *See* Prince, 321 U.S. at 166. Any deprivation of this right must therefore be accompanied by due process. The Constitution requires that when such a deprivation takes place, the individual who suffers the deprivation must be offered adequate notice and a reasonable opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). This does not necessarily mean that an individual is entitled to a full pre-deprivation hearing. *See* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-47 (1985) Often, a prompt post-deprivation hearing will provide a sufficient opportunity for the deprived individual to be heard. *See* Federal Deposit Ins. Corp.

v. Mallen, 486 U.S. 230, 240 (1988). This is especially true when the state also possesses a

compelling interest, such as that of protecting children from abuse or neglect. *See* Croft v.

Westmoreland County Children and Youth Services, 103 F.3d 1123, 1125 (3ʳᵈ Cir. 1997).

In determining whether plaintiff received due process, we apply three factors: (1) the

nature of the private interest affected by the state action; (2) the risk of error and the potential

effect of additional safeguards; and (3) the governmental interest. Mathews, 424 U.S. at 335.

Here, treating plaintiffs' allegations as true, the deprivation occurred without any evidence that

Patrick has sexually abused his own children. Furthermore, they had no meaningful

opportunity to present evidence at a pre- or post-deprivation hearing. Finally, plaintiffs allege

intentional misconduct by Beckelman and Jones during the investigation.

Taking plaintiffs' allegations as true, they were deprived of their right to family

autonomy without due process. At the very least, they were entitled to a hearing at which they

could present evidence. Also, if the determination to remove Patrick from the home was

unsupported by evidence, the deprivation was unlawful. While the state has a compelling

interest in protecting children, this does not excuse them from providing fair process before

taking a drastic step such as separation of the family.

A reasonable person in the defendants' position would have recognized that their alleged

actions were unconstitutional. Before the events giving rise to plaintiffs' claims, the Seventh

Circuit had determined that, absent exigent circumstances, children should not be separated

from their family without a pre-deprivation hearing. Brokaw, 235 F.3d at 1020. Here,

plaintiffs allege a deprivation absent sufficient evidence and absent any pre- or post-deprivation

hearing. Also, defendants' allegedly intentional or reckless conduct is not protected by

qualified immunity. At a bare minimum, we expect the officers to conduct the investigation

properly. *See id.* Defendants Beckelman, Jones and Glenney's motion to dismiss count I is

denied.

B.    <u>Count II - Career Opportunity</u>

Plaintiffs cannot demonstrate that the initial banishment directive derived Patrick of a

constitutionally protected right when he was forced to leave Cradles.  DCFS is in a very

sensitive position regarding child care services.  The state has a compelling interest in the

protection of children. Applying the <u>Mathews</u> factors to this alleged deprivation, the state acted

reasonably in immediately stopping a child care worker from continued employment upon

hearing of potential sexual abuse.  DCFS must take each and every allegation of sexual abuse

seriously.

The continued deprivation of Patrick's career is a different matter.  While he has no

constitutionally-protected interest in his reputation, he may state a deprivation if he shows that

a state action has made it virtually impossible to find employment in his chosen field.  <u>Doyle</u>,

305 F.3d at 617, *citing* <u>Townsend v. Vallas</u>, 256 F.3d 661, 669 (7th Cir. 2001).  When Patrick

became listed in the register, the state's action had this effect.  Plaintiffs' allegations here are

nearly identical to those in <u>Doyle</u> and <u>Dupuy</u>.  In both cases the courts determined that the

DCFS policies leading to registration violated plaintiffs' rights.  These cases were decided after

the events at issue in this case.  Plaintiffs' allegations, if they occurred today, would erase

qualified immunity.  Defendants in this case could not reasonably have known that they were

acting in violation of constitutional rights.

Defendants cannot rely on qualified immunity to defeat the improper investigation

claims.  While it is true that plaintiffs must allege something more than gross negligence in an

investigation, <u>Lewis v. Anderson</u>, 308 F.3d 768, 773 (7th Cir. 2002), qualified immunity will not

defeat a claim of intentional malfeasance. Insofar as the complaint alleges intentional or reckless wrongdoing by Beckelman and Jones, the motion to dismiss Count II is denied.

## CONCLUSION

For the foregoing reasons, defendants McKenzie, Cohen-Golper, Eads and Everette-Williams' motion to dismiss is granted, defendants Beckelman, Jones and Glenney's motion to dismiss count I is denied, Glenney's motion to dismiss count II is granted, and Beckelman and Jones' motion to dismiss count II is denied insofar as plaintiffs allege misconduct in the investigation.

JAMES B. MORAN
Senior Judge, U. S. District Court

April 3 , 2003.